United States District Court

District of Massachusetts

Worcester Division

Chamond Henderson

,                    petitioner

v.                                        civil action

United States of America

respondant                    No. 04-40119

Request to Amend 2255 motion

Comes now, petitioner, Chamond Henderson, and respectfully requests the Honorable court accept this Supporting Facts and Memorandum of law points as amendment to 2255 motion for consideration.

Petitioner also requests, as a courtesy to the respondant, the court extend time for response to this pleading.

US District Court
District of Massachusetts
Worcester Division

Chamond Henderson

      petitioner

   v.

United States of America

      repondant            civil action

                           No. 04-40119

Suppoting facts, Memorandum of law points, Issues and
Authorities in support of Motion to Vacate Sentence pursuant
to 28 U.S.C 2255.

Comes now, Petitoner, Chamond Henderson, and respectfully moves
this Honorable Court to vacate, set aside, or correct the
sentence imposed herein, as grounds and reaso therefore,
respectfully states;

Statement of Jurisdiction

    The Jurisdiction of this court is invoked pursuant to
Title 28, United States Code, Section 2255.

## Statement of the Case

On FEb. 17, 1999, a grand jury returned indictments against the Petitioner along with two co-defendants. The parties then embarked on a lengthy journey through the discovery process. On July 13, 2000, the grand jury returned superceding indictments upon which Petitioner was tried. Those indictments alleged that the Petitioner conspired to possess cocaine base with the intent to distribute, and conspired to actually distribute cocaine base (count one), possessed with intent to distribute and did actually distribute cocaine base within 1,000ft. of a school on or about Oct. 19, 1998 (count two), and on or about Oct. 27, 1998 (count three) and on or about Nov. 3, 1998 (count four), and did aid and abet in the possession with the intent and actual distribution of cocaine base on or about Nov. 17, 1998 (count five).

One of the co-defendants, Kim Powers (hereinafter "Powers"), reached an accord with the government, and pled guilty with an agreement to testify against the other two. trial trans. p. 4-202. Discovery continued, however, on Nov. 21, 2000, new counsel was appointed for the Petitioner. Throughout March and April of 2001, the final flurry of pre-trial motions were heard and decided, and the government filed an information to enhance the Petitioner's sentence.

On April 23, 2001 the trial began. trial trans. p.1-1. It continued for six days, concluding with the jury's guilty verdict on April 30, 2001 trial trans. p. 6,1;128. Five witnesses testified, and forty-nine exhibits were entered into evidence. The Petitioner was sentenced on Sept. 19, 2001, and was committed to the custody of the Bureau of Prisons for 240

months.

The Petitioner filed a notice of appeal on Sept. 21, 2001. Thereafter, on Sept. 25, 2001, the government moved to dismiss the preceding indictments, which was allowed.  The record was transmitted to the US Court of Appeals on Oct. 10, 2001.  Direct appeal was filed March 22, 2002.  Government's response was filed June 5, 2002.  Reply brief filed June 20, 2002.  US Court of Appeals for the 1st Circuit affirmed conviction on Feb. 14, 2003.  On May 8, 2003 petition for cert. in the US Supreme Court. Petition for cert. was denied on June 16, 2003.

This is Petitioner's 1st 2255 motion.  Petitioner has filed no other post-conviction motions in this court nor any other court pertaining to this matter.  Petitioner does have a petition in the South Carolina Supreme Court attacking the prior 1991 conviction in which the 21 U.S.C 851 enhancement is predicated.

Petitioner is currently incarcerated at FCI Fort Dix, New Jersey 08640, Petitioner has been in continuous custody since his arrest herein, on or about March 15, 1999.

2

## Argument

**Point I :**

     Petitioner was denied effective assistance of counsel at pre-trial, trial, and at appeal stages in violation of Petitioner's Sixth Amendment right to effective assistance of counsel.

In Gideon v. Wainwright, 372 U.S. 335 (1963), the Supreme Court held that the sixth amendment right to counsel was essential to a fair trial so as to due process of law. It has long been recognized that the right to assistance of counsel is the right to effective assistance of counsel. Cuyler v. Sullivan 446 U.S. 335-344 (1980); Powell v. Alabama 287 U.S. 45 (1932).

Hence, the right to effective assistance of counsel is dependent on the right of counsel itself. See Wainwright v. Torma, 455U.S. 580,587-88 (1982); and it is axiamatic that appointed counsel falls within the ambit of the sixth amendment guarantee of effectvie assistance of counsel.

Also the right of counsel attaches "at or after the initation of adversary judicial proceedings against the defendant." U.S. v. Gouveia 467 U.S. 180(1984).

In Evits v. Lucy 469U.S. 387(1985), the Supreme Court held that effective assistance of counsel on first appeal was a right guaranteed by the due process clause and the sixth amendment.

In the case at bar, Petitioner was denied effective assistance of counsel at rhe pre-trial, trial, and on appeal. Petitioner was represented by three different counselors. At the early pre-trial (Peter Ettenburg), at pre-trial and trial (Peter Parker), and on appeal (John T. Ouderkirk Jr.).

3

In presenting this ineffective claim Petitioner is familiar
with the U.S. Supreme Court's Strickland test that was enunciated
in the case of Strickland v. Washington 466 U.S 688(1984). The
prejudice rule that was articulated in Strickland and in subse-
quent cases, generally require the accused to show a reasonable
probability that counsel's supposed error affected the result
of the criminal proceeding in question.  Strickland requires
the accused to demonstrate that counsel's prformance was in
fact deficient, and that counsel's errors prejudiced the defend-
ant to the extent of being denied a fair trial.

Moreover, the Strickland court stated that the standard
for evaluating counsel's performance is that of reasonably
effective assistance according to the prevailing norms.  Id
at 688.  That counsel's performance fell below an objective
standard of reasonableness, and that counsel's deficient per-
formance prejudiced the defendant resulting in an unreliable
or fundamentally unfair outcome of the proceedings. Id at 687-
88.

The Strickland court has held that there must be a showing
that but for counsel's alleged error, there was a reasonable
probability that the results would have been different.  A
reasonable probability is one that is sufficient to undermine
confidence in the outcome.  U.S. v. Bagley, 473 U.S. 667 (1985).

Moreover, trial counsel did not present any defense that
would have shown the government had failed to prove the exist-
ence of any agreement, expressed or implied, in which Petitioner
had willfully, knowingly, and intentionally entered to become
a member of any conspiracy.  Nor did trial counsel present any
defense that would have shown that the government had failed
to prove that Petitioner had willfully, knowingly, and intention-

4

...-ally possessed with intent to distribute cocaine.

For trial counsel had a defense prepared and then did not use it. He only gave a boilerplate defense to Petitioner. Trial counsel made only one motion for judgment of acquital (Rule 29) for Petitioner. The trial court denied that motion. Aside from counsel's ineffectiveness, the outcome of Petitioner's trial would have been different. Had counsel been effective at Petitioner's trial, Petitioner would not have been convicted of all five counts of the offense herein. Nor would Petitioner been sentenced to 240 months in prison, that is 20 years under the prevailing Federal law, Petitioner is ineligible for parole, and must serve 85% of the 240 months.

Issue I:

During the pre-trial stage of this case counsel was ill prepared to argue motion to suppress fruits of warrantless search (dock# 99). Counsel neglects to interview or subpoena key eye witness in dispute of where wallet was seized from during Petitioner's arrest. Maureen Chamberlain and one of her co-workers were in the probation office prior to and during the arrest. P.O. Chamberlain and co-worker exited the office at some point after the initial arrest warrant was served.

P.O. Chamberlain and her co-worker work for the state and had no stake in the matter either way. Their eye witness account would have been paramount in the pursuit of the truth of the matter. Counsel did not interview or subpoena any of the people that were involved in the arrest to prepare for the motion hearing. In Hanes v. Dormire 240 F.3d 694, counsel failed to dispose or interview or subpoena any of states witnesses.

Here counsel had opportunity to get a third party's input to decide matter that was by the courts own words," a truth contest..." motion hearing trans. p.6 ln.17-18.

Counsel was also not prepared to effectively argue the points of law. The court posed legal questions counsel could not answer, requiring an extention of six days to respond. Motion hearing trans. p. 49,55. Stating to the court, "You know, I don't have anything ready to hand to the court right now. I would like the opportunity to look carefully for that." Trial counsel should have been prepared to answer the courts on the matter knowing this motion hearing was pending an evidentary hearing. Trial counsel was appointed by the court to represent Petitioner. Trial counsel's performance was deficient; and Petitioner was prejudiced thereby.

"The 6th amend. requires not merely the provision of counsel to the accused in a criminal prosecution, but assistance which is to be for his defense, and thus, the core purpose of the counsel guaranty is to assure assistance at trial when accused is confronted with both the intricacies of the law and the advocacy of the prosecution; if no actual assistance for the accused's defense is provided, then the constituional guaranty has been violated" U.S Cronic, 466 U.S 648,655 (1984); U.S v. Ash, 413 U.S 300, 309 (1973) "the constitution's gurantee of effective assistance of counsel cannot be satisfied by mere formal appointment." Avery v. Alabama, 308 U.S 444,446 (1940).

Issue II:

During trial stage counsel's opening statement about
Petitioner's music promotions business trial trans. p. 138 ln.5-12
which would have shed light on Petitioner's finances, was never
supported by testimonial evidence.  This testimony would have
come from the 10+ witnesses that counsel decided not to call.
In turn prosecution used that to say in closing argument
Petitioner was "indeed a successful businessman, that is a suc-
essful businessman in the business of crack cocaine." trial
trans. p.6 line 23.  This testimony would have also refuted
prosecution's theory of Petitioner using drug transaction money
to retrieve pawned items namely $320 for a watch.

Counsel attempted to paint a picture of defense at onset
of trial.  Then abandoned that picture by not presenting a
defense.  Ouber v. Guarino 293 F3d. 19, 35-36, failing to
fullfill a promise made in an opening statement, to call a witness
or to present evidence has amounted to ineffective assistance
of counsel.

## Issue III:

After coming to the realization at trial that there was a problem of perjured testimony in the grand jury, counsel should have filed a motion to dismiss indictment. During agent Anderson's trial testimony ,trial trans.p.2-57  it became apparent that he knew from the time the so called, "Sham sale" took place that CI Mozynski never made a hand to hand, face to face deal wiht "Butter" or anyone other than Powers.

At that point there should have been vigorous cross exam-ination of agent Anderson to establish why he had gone before two previous grand juries and lied about what he saw with his own eyes. Instead of drawing out the reasoning why behind this falsification, trial counsel makes one mention of it then backs away from the issue. This was an opportunity for the petit jury to learn that agent Anderson, the governments most credible witness, had testified under oath before two grand juries and in light most favorable to the agent supported lies about mater-ial facts. Instead there was no credibility attack or impeach-ment by defense of agent Anderson.

Lastly, at trials conclusion counsel does not attack the indictment for use of perjured testimony. Nor makes mention of it in his Motion for acquital Rule 29 arguments. Defendants may dismiss indictments to remedy government misconduct, includ-ing vindictive prosecution, prosecutorial misconduct in grand jury proceedings... Bank of Novia Scotia v. U.S. 487 U.S 250,254 What sound defense strategy is not to attack or expose but to ignore a defect or violation once you know it exists. "The noun "strategy" is not an accused lawyers talisman that

necessarily defeats a charge of constitutional ineffectiveness...
The strategy, which means "a plan, method, or series of maneuvers
or strategems for obtaining a specific goal or result." Random
House Dictionary 1298(rev. ed. 1975) must be reasonable. It
need not be prticularly intelligent or even one most lawyers,
would adopt, but it must be within the range of logical choices
an ordinarily competent attorney... would asses as reasonable
to achieve a "specific goal."
The goal was to protect Petitioner's right to a fundamentally
fair trial. Allowing prosecution to use perjured testimony
in order to obtain indictment without any attack on it was not
reasonable by any competent attorney's standards.

## Issue IV:

After months of pre-trial investigation and preparation
for defense by previous counsel, in the 11th hour trial counsel
decides not to call any witnesses or present any defense. Trial
counsel feels the prosecutions case has not been proven beyond
a reasonable doubt. Before the prosecution rested during a
recess, trial counsel suggests to Petitioner he does not want
to put up defense. This is the 1st mention of not using all
the 10+ witnesses and following through with the defense planned
on for months in pre-trial. He says, "the prosecutions case
is weak and he believes his cross examination has been good
enough to establish reasonable with the petit jury." Petitioner
disputes trial counsel's opinion and arges that prosecutions
story is the only side of the story being heard and there should
be witnesses called and evidence presented on his behalf.
Counsel disagrees and tells Petitioner to sleep on it.

Next court date prior to prosection resuming its case in-chief there was a recess.  Counsel again strongly suggests no defense is necessary.  Counsel and Petitioner go back and forth about the defense witnesses and sticking to the planned defense as opposed to relying on the incredible testimony of prosecution witnesses and overall weak case.  Counsel is persuasive. Prosecution resumes its case shortly thereafter concludes and rests.  Trial counsel notifies the court that defense will rest. In Harris v. Reed 894 F.2d 871,878; the court has held that Counsel's strategy not to call any witnesses... reliance on percieved weakness of prosecution's case was ineffective."

There was extensive investigation and preparation on facts of case and transactions.  Particularly on the fact that Powers (cooperating government witness) used many other dealers during the time of alleged conspiracy.  Additionally there was evidence that there was another individual with the same street name, "Butter" residing in the same block "Wachusett St." that two of the transactions of this alleged conspiracy took place. Evidence would have been produced that this other "Butter" has a criminal record of cocaine and crack sale convictions in the immediate area of the transactions of this conspiracy.  Yet trial counsel did not want to provide petit jury with any defense testimony period.  In Strickland 466 U.S. 690 the Supreme Court said "... despite the reasons for not calling these witnesses counsel's change of mind was not even a plausible option." There was no reason for counsel to believe charges would not be proven beyond a reasonable doubt without putting up some defense theory to support his claims from opening argument.

10

**Issue V:**

On March 20, 2001 a motion hearing took place to resolve many important pre-trial motions. This hearing had witness testimony, exhibits, oral arguments and ex parte motions resolved in front of trial court judge. At the end of the hearing it was clear to Petitioner this hearings transcript would be vital to defense in the future proceedings. Trial counsel orders that only the hearings witness testimony be transcribed by the court reporter. At the appeal stage Petitioner sought to obtain the hearing transcript and was only supplied with an excerpt of the hearing (witness testimony only). Appellate counsel, different from trial counsel, files direct appeal (March 2002) with issues that were dealt with at that March 20, 2001 motion hearing.

The U.S. 1st Circuit Court of Appeals denied Petitioner's direct appeal        . In the court's opinion it states pertaining to the admissibility of the Identification testimony "We were somewhat hampered... We will do the best we can with what we have." U.S. v. Henderson 320F.3d 92,99 ft.nt.#2. It is clear the appellate court deemed it necessary to see the entire record of the proceeding including all evidence admitted, witness testimony, oral arguments, judges comments and overall dialogue pertaining to the motions that were dealt with at the hearing. Appellate counsel did not diligently pursue the full record of the transcript. Though counsel had appeal issues that were fought in pre-trial at this hearing he never made an attempt to review the complete record for error. The Supreme Court stated in Hardy v. U.S. 375 U.S 277(1964) "Indeed the most basic and fundamental tool of an appellate

advocate's proffession is the complete transcript... anything
short of a complete transcript is incompatible with effective
appellate advocacy.  This is even true when trial and appellate
counsel are one in the same."  In this case the trial counsel
is not the same as the appellate counsel.  According to White
v. State of Florida ND. D.C 939 F.2d 912,914 n.4, "...a seperate
rule applies when a defendant has a different counsel for direct
appeal.  In that event, the absence of a substantial and signifi-
cant portion of the record entitles such a defendant to a new
**trial even absent any showing of prejudice.** U.S v. Selva 559
F.2d 1303,1305-1306.

The excerpt of this transcript is only 46 pages out of
the complete 98 pages.  The missing portion was not transcribed
by district court reporter until April 2004.  The Petitioner
finally received the complete transcript after many requests
from the court in May 2004 some 23 months after direct appeal
was written.  The information in the transcript dealt with not
only the issues that were posed on the direct appeal but other
issues that the appellate counsel did not have the opportunity
to review for error.  This includes fruits of warrantless search,
Kel tapes and their transcripts, etc.  In Mayer v. Chicago 404
U.S. 189 the Supreme Court said"due process requires that a
defendant be given a reliable record of sufficient completeness
to permit proper review of his claims."  This did not happen
in this case.

After reading US 1st Circuit Court of Appeals opinion on
direct appeal.  Petitioner inquired why appellate counsel did
not supply court with the complete record.  He replied, "I did
supply the record and besides the court has the full record
to review if necessary."

His reply, though somewhat ridiculous, was truthful.  He believed

he supplied the full record when he gave the motion hearing

transcript excerpt.  Since trial consel only asked the court

to transcibe a portion of the hearing full review was impossible

without further pursuit.  Appellate counsel did not diligently

pursue the remainder of transcript as did Petitioner to review

it for errors.  Especially after Petitioner made mention that

complete transcript should be sought for review of possible

errors made by court or trial counsel.

Appellate counsel's performance was deficient by the

Strickland standard and was so prjudicial that the appellate

court made mention of it in their opinion pertaining to the

Identification issue.  There were errors made at the hearing

pertaining to the fruits of warrantless search (see warrantless

search argument in this memorandum) The rest of the issue handled

at this hearing were dealing with evidence to submitted at trial.

The problem is appellate counsel never reviewed them with trained

eyes.  Thus Petitioner was prejudiced because at this point

his untrained eye is not skilled enough to pick out errors and

then argue them effectively.                              —

Issue VI:

_____Appellate counsel put forth issues that were weak while

ignoring the blatent constitutional errors; warrantless search.

and perjured testimony in the grand jury proceeding.  In Gray

v. Greer 800 F.2d 644, appellate counsel ignored stronger issue

and used a weaker one.  Also see Clemmons v. Delo 124 F.3d 944.95

Then appellate counsel goes to change grounds of an already

preseved objection (pawnshop receipt). The pawnshop receipt should have been argued at the higher court on relevancy grounds. This would have gotten reviewat the harmless error standard rather than the more stringent plain error standard.

Petitioner has set forth six issues that the counsel's performance was deficient. Each is a factual account of what and meet both prongs of the Strickland test. In Mach v. U.S 635F.2d 20. 26-27, This circuit's higher court said, "...we accept petitioner's allegations as true except to the extent that they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

The defective performance of the three different counselors has put the entire proceeding in jeopardy. Each of the errors by themselves were prejudicial enough to render the entire proceeding unfair and a violation of Petitioner's due process. As stated in Murray v. Carrier 477 U.S 478, A single isolated error on the part of the counsel can render his assistance ineffective if the error is sufficiently egregious and preju-dicial to the defense.

Petitioner was denied effective assistance of counsel at pre-trial, trial, and appellate stage of this process. Thus Petitioner's conviction was obtained in violation of his due process rights and his sixth amendment constitutional right to effective assistance of counsel. This court should vacate Petitioner's coviction.

Point II:

Prosecutorial misconduct; knowing use of perjured testimony in Grand Jury proceeding.

Long before the nascence of the Brady duty of disclosure, the Supreme Court had declared that the presentation of known false evidence in a criminal trial is incompatible with "Rudimentary demands of justice." Mooney v. Holohan 294 U.S 103,112 (1935); accord, eg., Pyle v. Kanas, 317U.S 213 (1942) Several years before announcing the Brady Rule, the court extends the prohibition of Mooney to the prosecutor's silent acquiescence when false testimony is presented, holding that "the same result obtains when the state, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinios, 360 U.S 264,269 (1959). Similarly, where a prosecutor manipulates the evidence to create a false impression before the grand jury, this constitutes prosecutorial misconduct and a corruption of the truth seeking function...albeit through somewhat different means. U.S v. Alzate, 47F.3d at 1110.

The controlling rule is that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." U.S v. Agurs 427 U.S 97,103 (1976) (footnote omitted). The prosecutor's knowing failure to disclose that testimony used to convict the defendant was false." stands on the same footing. U.S v. Bagley 473 U.S 667,678 (1985). This relaxed standard of materiality pertains because the presentation of or failure to correct false testimony "involves a corruption

of the truth seeking function of the trial process." Id.at 680

(citation ommitted).  The "reasonable likelihood" standard that

applies when false testimony is presented is the functional

equivalent of the Chapman v. California, 386 U.S 18 (1967)

constitutional harmless-error standard.  U.S v. Bagley, 473

U.S at 679 n.9.  Under that familiar rule, the inquiry is whether

there is a "reasonable possibility" that the constitutional

error "might have contributed to the conviction," and the burden

is on the state "to prove beyond a reasonable doubt that the

error complained of did not contribute to the verdict obtained."

U.S v. Bagley, 473 U.S at 679 n.9 (quoting Chapman).

This, 2255, is the 1st time Petitioner is raising the

perjured testimony in the Feb. 17, 1999 and July 13, 2000 Grand

Juries(from here on known as grand jury I and grand jury II

respectively).  Before trial any other objections based on

indictment waives such objection.  Courts may however grant

a defendant relief upon showing of good cause. US v. Marino

682 F.2d 449,454 n.3.  Petitioner was denied effective assistance

of counsel (see Point I isseue III).

The perjured testimony complained of happened at the grand

juries, the motion hearing (March 20, 2001), and the trial.

All of these false statements were made by angent Anderson the

the lead case agent for the DEA in this case and the governments

most credible and star witness.  Each false statement pertained

to a material fact of the case or an evidence issue.  This

In U.S v. Flaherty 668F.2d 566, this circuit's court has said,

"Although not a precise rule...perjured testimony must be mat-

erial to justify dismissal of indictment on basis of perjured

testimony..."  Agent Anderson's testimony fit that requirement.

|v

Agent Anderson is the sole grand jury witness.  His test-
imony is the only evidence that the grand jurors had to ascertain
whether or not indictment was warranted in this case.  He
constantly gave hearsay evidence to the grand jury.  In his
capacity, as lead agent, he wasn't involved in any of the trans-
actions, set up of the transactions or particulars of the alleged
conspiracy.  Due to agent Anderson's percieved and literal,
distance from the goings on of the alleged conspiracy, his test-
imony to the grand jury is riddled with, "according to the CI,
from his debriefing, The CI said, etc..."  This is where the
problem lies.  In Estrepa 471 F.2d 1132 the court held that
lack of personal knowledge... nature of presentation to grand
jury.  Required dismissal.  Stressing importance of avoiding
undue reliance on hearsay before grand jury.  The grand jurors
could not have known when agent Anderson was speaking of his
own eye witness account or simply relying what the CI told him
in debriefing.  The prosecutor's line of questioning for the
and Anderson's in and out, up and down responses had to be con-
fusing for the jurors to follow.  This was used to the prosecu-
tions advantage.  The agent had no intention of revealing the
complete truth to the grand jury.  Also U.S v. Estrepa 471 F.2d
1132 at 1136 the court said, "the grand jury must not be misled
into thinking it is getting eye witness testimony from the agent
whereas it is actually being given an account whose hearsay
nature is concealed. U.S v. Leibowitz 420 F.2d 39,42.

The testimony in question pertains to the so called "sham
sale" on Nov. 16, 1998. In Grand Jury I trans. p.14 ln.15,
prosecutor begins asking agent Anderson what occured on Nov.

16, 1998, he describes the beginning of "the sham sale." Grand
Jury I trans. P.15 ln.3 "The CI and Powers are observed getting
out of the vehicle." It is well documented in the agent Anderson
DEA-6's, debriefing reports, and trial testimony that he was
doing surveillance that night. He is the person who observes
CI and Powers, the other officers mentioned do not arrive until
after "sham sale" has transpired. Grand Jury I trans. p.15
ln.9-13, "from the debriefing, the CI stated that Powers and
the CI met with "Butter." He handed, the CI handed Butter the
$3,000. Butter handed him a newspaper containing a plastic
bag with crack cocaine." Anderson speaks to grand jury as if
he had no knowledge of what transpired during this part of the
"Sham sale" He is only reciting what CI told him at debreiefing.
Prosecutor and agent Anderson are falsely leading grand jury
to believe agent Anderson had no personal knowledge of what
took place at "sham sale." At this point prosecutor should
have known what the agent actually and knew from his own personal
eye witness surveillance of the "sham sale." and whether or
not it was consistant with agent's police reports and the CI's
statements.  The introduction of perjured testimony constitutes
a fundamental defect.  According to U.S v. Biberfeld 957 F.2d
98,102, "If a prosecutor uses testimony it knows or should know
is perjury, it is fundamentally unfair to an accused.

   In Grand Jury II trans. p.9 ln.24 prosecutor begins saking
agent Anderson what happened on Nov. 16, 1998 "the sham sale".
Agent Anderson again describes the beginning of the "sham sale"
p.10 ln.10 "he (CI) was observed going---walking into 6 Denny
Street" Again agent Anderson is doing the surveillance himself

when he says, "observed" he is the one that sess what happened.

18