(observing the relevant inquiry "is whether under all the circumstances of [the] case, viewed as of the time of counsel's conduct, counsel's performance was reasonable").

> [T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.... Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required.

United States v. Ortiz Oliveras, 717 F.2d 1, 3-4 (1st Cir. 1983). See also Barrett, 965 F.2d at 1193 (habeas petitioner must demonstrate that counsel's error "clearly resulted from neglect or ignorance rather than from informed, professional judgment" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Under Strickland's second prong, Henderson must also affirmatively prove prejudice, i.e., that his attorney's errors "actually had an adverse effect on the defense" and not merely that they "had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693.

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

466 U.S. at 694. See also Matthews, 54 F.3d at 916 (same).

21

Focusing on this prong, the First Circuit has stated:

> On one end, it is not enough to show that the errors had "some conceivable effect on the outcome." Nor is it required, however, that the defendant prove that the errors were more likely than not to have affected the verdict. It is important to maintain the focus of an ineffectiveness inquiry on the "fundamental fairness of the proceeding."

Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001). See also Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998)(observing that under the prejudice prong, defendant must demonstrate that there was a reasonable probability that but for counsel's errors "the outcome of the trial would have been different" but that the analysis is not limited to outcome determination – "we must also contemplate 'whether the result of the proceeding was fundamentally unfair or unreliable.'").

In Gonzalez-Soberal, the Court focused on three factors in making the prejudice determination: (1) the strength of the government's case; (2) the effectiveness of the defense presentation absent the unproduced evidence (in that case, two impeachment documents not used by counsel); and (3) the potential value of the unproduced evidence in undermining the credibility of the government witnesses' testimony. Id. at 278-79. In analyzing the prejudice issue in connection with claims similar to those raised by Henderson, courts have similarly focused on the strength of the government's evidence and whether the defendant's proposed testimony would have made any appreciable

difference in the outcome or rather, whether it would have opened
the door to damaging evidence such that it would have actually
hurt the defense or increased the likelihood of conviction.  *See*
Rega v. United States, 263 F.3d 18, 21-26 (2nd Cir. 2001)(no
reasonable probability that defendant's testimony would have
altered trial's outcome where government's case was substantial
and defendant's testimony would have opened the door to damaging
impeachment evidence); Sayre v. Anderson, 238 F.3d 631, 635 (5th
Cir. 2001) (observing that there was no reasonable possibility
that defendant's testimony would have led to a different outcome
in view of government's overwhelming evidence); Brown v. Artuz,
124 F.3d 73, 80-81 (2nd Cir. 1997)(no reasonable probability
"that the verdict would have been different" if defendant
testified); Wright v. Estelle, 549 F.2d 971, 974 (5th Cir.
1977)(no doubt that defendant's testimony would not have altered
the verdict where the government's evidence was overwhelming);
Concepcion v. United States, 2002 WL 91578 at *18 (E.D. NY
1/24/02)(since the government's evidence was overwhelming, it was
reasonably certain that, "had [defendant] testified, there would
have been no different result").

One final point is worth mentioning.  In *Strickland,* the
Court emphasized that a habeas court need not address the
performance prong before considering the issue of prejudice.

> Although we have discussed the performance
> component of an ineffectiveness claim prior

23

to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.  The First Circuit has explicitly followed this mandate.  *E.g.*, Gonzalez-Soberal, 244 F.3d at 277-78 ("Addressing the prejudice prong prior to evaluating counsel's conduct is a permissible approach and even endorsed where more efficient."); Perron v. Perrin, 742 F.2d 669, 673 n.2 (1st Cir. 1984)("If it is easier to dispose of a claim on the ground of lack of prejudice, that course should be followed.").[12]

**2.  Defense Counsel's Handling of the Suppression Hearing Was Not Constitutionally Deficient and Could Not Have Prejudiced Henderson**

---

[12]In *Perrin,* defense counsel in a state robbery case failed to obtain a ruling from the trial court on a motion in limine to preclude cross-examination about a prior conviction if the defendant testified; the motion became moot when the defendant chose not to testify. 742 F.2d at 673-74. In rejecting the defendant's claim that his trial counsel improperly advised him about the motion and his right to testify, the Court ruled that any error on counsel's part was not prejudicial. Id. at 674-75. "When viewed against the totality of the evidence presented at trial, we do not believe that petitioner has shown a reasonable probability that his testimony would have made a difference." Id. at 675.

24

The first argument that the government has been able to glean from the Petition concerns Attorney Parker's handling of the Motion to Suppress the contents of Henderson's wallet. Henderson asserts a number of complaints about the manner in which this proceeding was conducted including Parker's failure to call witnesses in his behalf, Parker's supposed lack of preparedness, and the government's alleged use of perjured testimony in the form of an affidavit submitted by S/A Anderson. All of these arguments are specious based on the undisputed evidence.  Even if they were not, the still could have been raised on direct appeal and hence are cognizable here only if they also rise to a Sixth Amendment violation by Henderson's appellate counsel.[13]

The motion to suppress was filed on February 2, 2001.  It alleged that Henderson's wallet was seized from his car on the day of his arrest and that the entry of the police into the car violated Henderson's Fourth Amendment rights.  See Motion to Suppress Fruits of Warrantless Search (Docket 99) at 1-2.

The evidence at the suppression hearing was to the contrary.

---

[13] A criminal defendant is also not entitled to relitigate issues that *could have been raised* on direct appeal, but were not, absent a showing of cause excusing the default and actual prejudice resulting from the error of which he complains. See United States v. Frady, 456 U.S. 152, 167-68 (1982); Suveges v. United States, 7 F.3d 6, 10 (1st Cir.1993) (holding that a party must show cause and prejudice to raise an objection not argued on direct appeal in a § 2255 motion).  Hence, even if some portion of Henderson's current claims of error was not pressed on direct appeal, he still bears the burden of showing cause and prejudice to avoid summary dismissal.

Both S/A Anderson and S/A Guerard testified under oath that
Henderson was carrying his wallet on him at the time of his
arrest and that nothing was seized from Henderson's car.
Suppression Hearing Tr at 12-13 (S/A Anderson testified that
Henderson's wallet was found on his person at the time of his
arrest); 35-36 (S/A Guerard testified that wallet was obtained at
the time of arrest)   Its seizure was therefore lawful under
settled law governing searches incident to a lawful arrest.[14]
E.g., Illinois v. Lafayette, 462 U.S. 640, 648 (1982) (following
an arrest, "it is entirely proper for police to remove and list
or inventory property found on the person....").[15]

   Notwithstanding the clarity of this testimony and the legal
conclusion that inexorably flowed from it (i.e., that the seizure
and copying of the contents of the wallet was lawful), Henderson
asserts that Parker's handling of this hearing was
constitutionally deficient.   Henderson asserts that Parker should
have called his probation officer (who helped arrange the arrest
by alerting the DEA that Henderson had a scheduled meeting with

---

[14] It is undisputed that a valid warrant was outstanding for Henderson prior to his arrest.

[15] Similarly, credibility determinations that the Court made in denying the motion are literally immune from either collateral or direct attack.  E.g., United States v. Payton, 615 F.2d 922, 923 (1st Cir. 1980) (where a district court denies a motion to suppress without making specific findings or issuing separate conclusions of law, its decision will be upheld if any reasonable view of the evidence supports the District Court's determination).  Accord, United States v. Campa, 234 F.3d 733, 737 (1st Cir. 2000); United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996).

her) as a witness.  Although it is not clear that the probation
officer was even in the room when Henderson was searched, <u>see</u>
Suppression Tr at 23 (unclear if anyone other than federal agents
were in the room when Henderson was searched), and Henderson
offers nothing to establish that the probation officer would have
offered any favorable testimony if she had been called, he
asserts that Parker's decision not to call her amounts to
constitutionally defective representation.

This argument fails for any number of reasons.  "An
attorney's decision whether to call specific witnesses--even ones
that might offer exculpatory evidence--is ordinarily not viewed
as a lapse in professional representation." <u>United States v.
Best</u>, 219 F.3d 192, 201 (2d Cir.2000).  Here, there was nothing
to suggest that the probation officer had seen anything of
relevance much less that her testimony would contradict that of
Agents Anderson and Guerard.  Nor has Henderson even bothered to
establish that Parker in fact failed to do the questioned
investigatory work before the suppression hearing took place. <u>See
United States ex rel. Walker v. Henderson</u>, 492 F.2d 1311, 1314
(2d Cir.1974) ("the decision to call or bypass particular
witnesses is peculiarly a question of trial strategy which courts
will practically never second-guess"); <u>Barnhill v. Flannigan</u>, 42
F.3d 1074, 1078 (7th Cir.1994) ("Usually, counsel's decision not
to call a witness is a tactical decision not subject to review").

Because Henderson has failed to establish both that Parker's representation of him at the suppression hearing (in which Parker aggressively cross-examined S/A Anderson and called S/A Guerard as his witness) was deficient or that any such deficiency could have caused him prejudice, this aspect of the Petition must be dismissed. E.g., Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001) (in dismissing 2255 claim based on defense counsel's alleged failure to call witnesses, court noted that the failure of the petitioner to identify potential witnesses and specify what they would have said made it impossible to determine whether counsel's performance was deficient and whether there was any resulting prejudice: "Without knowing who Saunders would have had counsel call as witnesses and what their testimony in his defense might have been, it is not possible for us--or anyone--to determine whether counsel's failure to identify (assuming trial counsel in fact failed to identify these witnesses) or to call such witnesses was reasonable at the time of trial" ); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir.1991) ("self-serving speculation concerning putative witness' testimony will not sustain an ineffective assistance claim").[16]

---

[16] The only case that Henderson cites for the proposition that the failure of Attorney Parker to call the probation officer amounted to ineffective assistance of counsel is Hanes v. Dormire, 240 F.3d 694 (8th cir. 2001). See Petition at 6. In fact, the Hanes court rejected claims of ineffective assistance based on strategic choices made at trial and the failure of the Petition to establish prejudice. Hanes, 240 at 697 (after noting that "decisions relating to witness selection are normally left to counsel's judgment," Court concluded that none of the identified testimony

Henderson's second claim relating to the suppression hearing is based on the government's supposed use of perjured testimony in connection with it. Petition at 17, 29.  The only such statement identified is contained in S/A Anderson's affidavit relating to his understanding that no one had either seen or driven Henderson's car on the day of Henderson's arrest.  Id. In fact (unbeknownst to Anderson at the time he prepared the affidavit), S/A Guerard had located Henderson's car and had begun bringing it to the police when it ran out of gas. Suppression Tr at 7.  This error had no bearing on the issues at the suppression hearing (in that S/A Guerard testified that he seized nothing from the car) and in any event was pointed out to defense counsel and the Court before the suppression hearing started and again during Anderson's direct testimony.  Id. at 7,10-11.  The testimony demonstrated, among other things that Anderson simply made a mistake that was based on what he (as opposed to the other agents) had done on the day of Henderson's arrest.  Id. at 11 (Anderson neither saw nor recalled that Guerard had found Henderson's car on the day of the arrest).

Henderson's claim that the error in Anderson's affidavit rises to the level of government misconduct that could have entitled him to some form of relief had it been pressed by

_____

"was so important as to put counsel's failure to consult with or call these witnesses outside the wide bounds of strategic choices that counsel is afforded"). Rather than supporting the claims asserted, Hanes thus confirms that they must be rejected.

Attorney Parker cannot withstand the slightest scrutiny.  Parker
extensively cross-examined both Guerard and Anderson on this
point in the hope of damaging their credibility in what was
otherwise a straightforward suppression issue.  Suppression Tr at
14-16 (Anderson cross); 36-41 (Guerard direct).  In fact, the
error in the affidavit had no bearing on the suppression issues
because Guerard did not seize anything from the car and because
the evidence established that Henderson was carrying his wallet
at the time of his arrest.  See discussion above.  Hence, even
assuming that Anderson's affidavit was something more nefarious
than a simple failure of memory committed more than two years
after the fact (and that's all the record shows that it was),
this part of the Petition also fails because Anderson's statement
could have not been material, particularly in view of the fact
that it was fully disclosed to the Court at the outset of the
hearing and the Court denied the motion to suppress.  E.g.,
United States v. Gonzalez-Gonzalez, 258 F.3d 16, 22 (1st Cir.
2001) (if the government knowingly used perjured testimony, test
on post-conviction review is whether "there is any reasonable
likelihood or probability that the proffered evidence that [the]
testimony was false could have affected the jury's judgment").
See also Hill v. United States, 236 F.Supp. 155, 159 (E.D. Tenn
1964) (a petition under Section 2255 cannot seek to relitigate

the credibility of witnesses).[17]

### 3. No basis existed to dismiss the indictment or enter a required finding of not guilty based on alleged government misconduct

As they were in the underlying proceeding,[18] Henderson's claims of government misconduct are broader than the error in Anderson's suppression affidavit. Henderson also asserts that Anderson lied before the grand jury and at trial and that the failure of defense counsel to either seek to dismiss the indictment or to move for a required finding of not guilty rises to the level of a constitutional claim of ineffective assistance of counsel. Petition at 9-10, 16-28.

It is critical for the court to focus on the specific statements at issue and their minimal relevance in the underlying proceeding.  The only thing that Henderson attacks are statements

---

[17] The Petition makes two other suppression-related claims.  The first is that Guerard's entry into the car was unlawful notwithstanding settled law regarding the right of the police to impound and do inventory searches incident to an arrest.  Petition at 29-35.  E.g., South Dakota v. Opperman, 428 U.S. 364, 373 (1976); Colorado v. Bertine, 479 U.S. 367, 371 (1987).  The simple fact is that this argument is irrelevant because Guerard did not seize anything fom the car and thus there was nothing to suppress.

The second claim is that Henderson's  appellate counsel was ineffective because he failed to provide the First Circuit with the entire suppression transcript. Petition at 12-14.   Even assuming that this failure amounted to ineffective assistance, the simple fact is that Henderson has failed to demonstrate that anything in the additional portion of the transcript was material to the issues on appeal, much less that it would have been outcome determinative.  Thus, these arguments also fail.

[18] Henderson's defense counsel repeatedly argued that Anderson had perjured himself in the underlying proceeding and made extensive use of the statements at issue on cross examination.

31

made by Anderson before the grand jury that, on November 16, 1998
(the day of the sham sale of three ounces of wax), the
cooperating witness (Mozynski) directly exchanged $3,000 in
official government currency for what ultimately turned out to be
wax. See Grand Jury Tr. (2/17/99) at 14-15; Grand Jury Tr.
(7/13/2000) at 11; Petition at 19.[19]  Although this was in fact
was Mozynski told Anderson at the time, it later turned out that
Powers had done the deal that day with Henderson while Mozynski
stood some distance away.  Even though Andersen's grand jury
testimony was therefore accurate, Henderson claimed that Anderson
must have known that Mozynski's statements were inaccurate based
on what he was able to see from his surveillance position.  In
fact, Anderson testified that Mozynski was alone on that date and
that he thus could not have done a hand-to hand deal for the wax
with Henderson. [2 Tr. 58, 111].[20]  There was nevertheless
substantial evidence that Henderson had been the source of the
wax on that date and that he was the source of the replacement
drugs that Powers delivered the next day.  See discussion at pp.
12-14.  See also United States v. Henderson 320 F.3d at 98-99
(discussing, among other things, telephone calls between Guerard
and Henderson regarding the sham sale of wax).

---

[19] A copy of the grand jury testimony is attached as Exhibits 2 and 3.

[20] The trial evidence established that the wax was actually given to Mozynski by Powers
who in turn got it from Henderson.  There was substantial corroboration of Henderson's
involvement in the transaction including the statements that Carey made about the deal

In the face of all this, Henderson claims that Attorney Parker should have moved to dismiss the indictment in this case because of Anderson's alleged perjury. Henderson also claims that, even if the indictment would not have been dismissed (as it would not have been in the circumstances of this case), that Attorney Parker should have pressed this claim at the Rule 29 stage and, had he done so, this would have resulted in dismissal. Petition at 22-24. Henderson makes this latter claim even though Anderson's trial testimony made it crystal clear that he had not seen Mozynski meet with Henderson on the day of the "sham sale." Id.; see also [2 TR 56-65].

As substantial as the general burden is for a Petitioner under section 2255, it is even higher where, as here, the claim is that the government used perjured testimony.[21] In such circumstances, a Petitioner must show that perjured testimony was knowingly used and that it was material, i.e, that the testimony was likely to have affected the outcome of the underlying proceeding. See Green v. United States, 313 F.3d 6, 7 n.2 (1st Cir. 2003) ("it is not enough that perjury be shown; there must

---

[21] The case law discussed below all deals with claims that a Petitioner's conviction was based on the government's use of perjured trial testimony. For purposes of this memorandum, the government assumes that they apply here, even though the defendant pled guilty to the substantive counts against him. But see United States v. Ruiz, 536 U.S. 622, 628-29 (2002) (Constitution does not require pre-guilty plea disclosure of impeachment information because "[w]hen a defendant pleads guilty[,] he ... forgoes not only a fair trial, but also other accompanying constitutional guarantees").

be proof that it was committed with the knowledge of the
prosecution"); <u>Gilday v. Callahan</u>, 59 F.3d 257, 269 (1st Cir.
1995) (even if the government knowingly failed to correct
perjured testimony, "the error would be harmless if it more
likely than not had no effect on the verdict"). <u>See generally</u>
<u>Napue v. Illinois</u>, 360 U.S. 264, 271-72 (1959) (knowing use of
false testimony is "material" if there a reasonable likelihood
that the false testimony, coupled with the evidence properly
presented at trial, could have affected the judgment of the
jury); <u>United States v. Gonzalez-Gonzalez</u>, 258 F.3d 16, 22 (1st
Cir. 2001) (if the government knowingly used perjured testimony,
test on post-conviction review is whether "there is any
reasonable likelihood or probability that the proffered evidence
that [the] testimony was false could have affected the jury's
judgment").

To obtain dismissal of an indictment based on the use of
perjured testimony in the grand jury, the Petitioner's burden is
even higher.  Dismissal of an indictment is an extreme remedy,
appropriate only in cases of "serious and blatant prosecutorial
misconduct that distorts the integrity of the judicial process."
<u>United States v. Georgi</u>, 840 F.2d 1022, 1030 (1st Cir.1988).  A
defendant seeking to dismiss an indictment based on the
government's alleged use of perjured testimony must first
demonstrate that the prosecutor's testimony was knowing and

"material." E.g., United States v. Manqual-Corchado, 139 F.3d
34, 41-42 (1ST Cir. 1998). Even where perjured grand jury
testimony has been used, that fact will not require dismissal
where there is other truthful evidence to support the grand
jury's return of the indictment or where a defendant is convicted
by a petit jury that has been informed of all of the facts. Id.
See also United States v. Font-Ramirez, 944 F.2d 42, 46 (1st
Cir. 1991) ("Even where misconduct is present, post-conviction
dismissal of an indictment is a rare event, in large part because
the petit jury's verdict ordinarily cures any failings in the
grand jury process."); United States v. Udziela 671 F.2d 995,
1001 (7th Cir. 1981) ("If other, sufficient evidence is present
so that the grand jury may have indicted without giving any
weight to the perjured testimony, the indictment cannot be
challenged on the basis of the perjury.").

Application of these principles here shows that this claim
is also specious for any number of reasons. Henderson has not
shown (and cannot show) that the statements at issue were either
knowing or material. In the course of his grand testimony, S/A
Anderson relayed accurately what the CW had told him after the
alleged sale on November 16. Although in hindsight, Anderson
should have called into question that version (since it appeared
that Powers got the wax from Henderson and then provided it to
Mozynski) there is absolutely no evidence that Anderson's

35

testimony was anything more than an innocent mistake made long after the events at issue. Because the record simply does not support the claim that Anderson made any statement to the grand jury that he (or AUSA Sinnot) knew to be false, the perjury claim fails.[22]

Moreover, even if the record could support Henderson's claim that Anderson knowingly gave false testimony, there is no basis in the record to claim that it was material or that it could have affected the validity of indictment that the grand jury returned or the verdict in this case delivered after six days of trial. As set forth above, the contested statement related only to the sham sale on November 16, a transaction that was never charged in the indictment. Although the distribution of the replacement crack cocaine delivered on November 17 was charged, there was independent evidence regarding that sale (which had nothing to g to do with who handed the wax to Mozynski the night before). Even if the source of the wax was critical to any of the crimes charged in the indictment, there was also ample other evidence put before the grand jury that it was Henderson. This evidence included the conversation that Mozynski had with Carey immediately after the sale (which was monitored by the agents and in which Cary admitted that "Butter" was the source of the wax)

---

[22] This is exactly the explanation that the government gave when this very claim was made at the sentencing hearing and which the Court accepted. See Sentencing Tr at 25-26.

and the conversation that S/A Guerard then had directly with Henderson in which Henderson promised to replace the wax with crack cocaine beginning the next day (when Powers in fact delivered an ounce of crack cocaine on Henderson's behalf). See 2/17/99 Grand Jury Transcript at 15-17; 7/13/00 Tr at 12 -13. Because the details of the November 16 sham sale (i.e., whether Mozynski or Powers got the wax from Henderson in the first instance) was not material to the crime charged the next day and because both grand juries heard other compelling evidence that the source of the wax and the replacement crack was in fact Henderson, this claim also fails as a matter of law. See also United States v. Reyes-Echevarria, 345 F.3d 1, 4 (1st Cir. 2003)(court of appeals will reverse refusal to dismiss indictment based on claim of prosecutorial misconduct "only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations"); Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989) ("Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried.").[23]

---

[23] Even if all of the other defects in this argument could be overlooked, Henderson can also not establish that Parker's strategic decision to focus on the government misconduct claim as a grounds for a potential departure was unreasonable. Any claim that Parker's failure to seek a

**4.  Attorney Parker's decision not to put on a limited defense case cannot support a claim of ineffective assistance of counsel**

Henderson's next claim is that Attorney Parker was ineffective based on his failure to call 10 witnesses in Henderson's defense.  Petition at 10-11.  Henderson acknowledges that this was a strategic decision made by Parker after Parker consulted with him and that he concurred in the decision.  Id. ("Counsel and Petitioner go back and forth about the defense witnesses.... Counsel is persuasive.").  Henderson has not, however, identified any of these purported witnesses or specified in any detail what it is he now claims they would have said other than to suggest generally that someone would have said there was another person named "Butter" who lived in the same area and that Henderson had in Fact had a music promotion business during the relevant time period.

This argument must be rejected for all the same reasons set forth with respect to the suppression arguments set forth above.  See discussion at pp. 23 -29.  Henderson has not established who these witnesses were or that the testimony that they were

---

Rule 29 motion based on this issue  also fails because the testimony was clarified at trial and thus the jury had a full and fair opportunity to consider both the facts underlying the November 17 transaction and S/A Anderson's credibility.  See, e.g., United States v. Flores-Rivera, 56 F.3d 319, 328 (1st Cir.1995) ( "[e]rrors before the grand jury warrant dismissal of an indictment only if such errors prejudiced the defendants"); United States v. Mechanik, 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (All but the most serious errors before the grand jury are rendered harmless by a conviction at trial).

supposedly prepared to offer was so significant that it would
made a difference in this case, particularly where the
government's evidence against him was so substantial. See Patel
v. United States, 19 F.3d 1231, 1237 (7th Cir.1994)("[w]here a
petitioner claims his trial counsel failed to call a witness, he
must make a specific, affirmative showing as to what the evidence
would have been, and prove that this witness's testimony would
have produced a different result"); United States v. Hatcher,
1997 WL 698488, at * 2 (E.D.Pa. Nov. 17, 1997)(section 2255
petitioner did not establish prejudice based upon trial counsel's
failure to call witnesses where petitioner failed to show what
the witnesses might have said or how their testimony would have
affected the outcome of the trial). See also LaBonte, 70 F.3d
1396, 1413 (1st Cir. 1995) ("A habeas application must rest on a
foundation of factual allegations presented under oath, either in
a verified petition or supporting affidavits.  Facts alluded to
in an unsworn memorandum will not suffice"). These failures
require that the Petition be dismissed.

There is, of course another equally compelling reason to
reject this aspect of the Petition as well.  By its terms, the
Petition establishes that Attorney Parker and Henderson carefully
considered the option of putting on a defense case and made a
strategic choice not to do so based on their mutual assessment of
the effectiveness of the cross-examinations and the likelihood

that they would be sufficient to establish reasonable doubt.[24]
See Petition at 11.  While in hindsight, Henderson may now wish
that he had made a different choice, the fact is that this is
precisely the kind of informed strategic choices that are
unassailable under section 2255.  As the court noted in United
States v. Lema, 987 F. 2d 48, 54 (1st Cir. 1993):

> Reasonably competent trial counsel might well have
> determined that the best prospect for acquittal lay in
> discrediting the government's witnesses, rather than
> presenting additional testimony which could appear to
> legitimate the government's case or raise questions about
> the defense not previously suggested by the government's
> evidence.

Lema also makes clear that the precise basis or bases for trial
counsel's strategy are presumed to be reasonable and that there
is a strong presumption that counsel's conduct falls within a
wide range of reasonable professional assistance.  Id. at 51.
This claim, therefore, like all of the others made in the
Petition, is utterly without merit.  See also Barnhill v.
Flannigan, 42 F.3d 1074, 1078 (7th Cir.1994) ("[u]sually,
counsel's decision not to call a witness is a tactical decision
not subject to review."); United States v. Lindsay, 157 F.3d 532,
536 (7th Cir. 1998) ("the strong Strickland presumption that

---

[24] The fact that there were two defense counsel and that Attorney Grabouski also cross-examined the government's case only adds to the reasonableness of the choice that was made. See United States v. Cohen, 996 F. Supp. 110, 116 (D. Mass. 1998) (Young, C.J.) (defense counsel's cross-examination of a cooperating co-conspirator was not ineffective where the witness "has been extensively and thoroughly cross-examined by the defense counsel of his codefendants").

trial counsel had good reasons for strategic decisions" doomed argument that failure to call witnesses amounted to ineffective assistance of counsel): <u>Jones v. Hollins,</u> 884 F.Supp. 758, 765-66 (W.D.N.Y.), aff'd,, 89 F.3d 826

(2d Cir. 1995) ("the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation.... [T]he habeas court 'will not second-guess trial strategy simply because the chosen strategy has failed ...,' especially where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial").

### 5. The admission of the pawn shop receipt was proper and cannot support an ineffective assistance claim

Henderson's final argument is that the Court's admission of the pawn shop receipt somehow provides him with a basis for relief on collateral review.  This argument is belied by the fact that Attorney Parker contested the admission of that exhibit at trial and that appellate counsel then renewed the claim on appeal. <u>See</u> [5 Tr 104-106]; <u>Henderson</u>, 320 F.3d at 102.  Because the admissibility of that receipt was argued at both levels, was plainly relevant to show unexplained sources of wealth and in any event could not have been outcome determinative in view of all the evidence in this case, this argument also fails.  <u>United States v. Addonozio</u>, 442 U.S. 178, 185 (1979) (In order for relief to lie under §2255, the claimed error must be

41

jurisdictional, constitutional, "a fundamental defect which inherently results in a complete miscarriage of justice", or "an omission inconsistent with the rudimentary demands of fair procedure."); <u>Murchu v. United States</u>, 926 F.2d 50, 55 (1st Cir. 1991)(issues resolved by a prior appeal will not be reviewed again by a motion pursuant to 28 U.S.C. § 2255 motion); <u>United States v. Tracy</u>, 739 F.2d 679, 682 (1st Cir. 1984) "[a]bsent an intervening change in the applicable law, issues that have been raised and decided on a motion for a new trial cannot be reconsidered in a subsequent collateral attack.").

### CONCLUSION

Based on the foregoing, the government respectfully requests that the Petition be summarily denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: <u>/s John A. Wortmann, Jr.</u>
JOHN A. WORTMANN, JR.
Assistant U.S. Attorney
One Courthouse Way
Boston, MA
(617) 748-3207

### CERTIFICATE OF SERVICE

I, JOHN A WORTMANN, JR., Assistant U.S. Attorney, do hereby certify that I have this 13th day of January, 2005, served the copy of the foregoing by mail to Chamond Henderson, PRO SE, No. 80165-038, FCI, Fort Dix West, PO Box 7000-5802 Fort Dix, NJ 08640.

<u>/s John A. Wortmann, Jr.</u>
JOHN A. WORTMANN, JR.

42