United States District Court
District of Massachusetts

```
_____
                               )
CHAMOND HENDERSON,             )
                               )
        Petitioner,            )
                               )    Civil Action No.
        v.                     )    04-40119-NMG
UNITED STATES OF AMERICA,      )
                               )
        Respondent.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This petition for habeas corpus filed pursuant to 28 U.S.C. § 2255 arises out of the petitioner's conviction on five drug-related offenses following a jury trial. Petitioner, Chamond Henderson ("Henderson"), alleges violations of his constitutional rights under the Fourth and Sixth Amendments. The government moves for dismissal of the petition (Docket No. 3).

**I.   Factual Background**

On February 17, 1999, a federal grand jury returned an indictment against Henderson and two co-defendants, Robert Carey ("Carey") and Kimberly Powers ("Powers"). A superceding indictment later added allegations of drug weight and other factors. Count One charged that, from October 19, 1998 to November 17, 1998, Henderson conspired to possess with intent to distribute more than 50 grams of crack cocaine in violation of 21

-1-

U.S.C. § 846.  Counts Two through Five charged Henderson and others with possessing, and aiding and abetting the possession of, crack cocaine with the intent to distribute it and with distribution of crack cocaine on October 19, October 27, November 3 and November 17, 1998, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Throughout the proceedings, Henderson was represented by experienced criminal defense attorneys.  Initially, he was represented by Attorney Peter Ettenberg, who withdrew after a conflict of interest became apparent.  Henderson was represented at trial by Attorney Peter Parker, a former Federal Public Defender.  On appeal, Henderson was represented by Attorney John Ouderkirk.

As trial approached, Henderson's attorney successfully challenged one of his prior convictions to the effect that Henderson was relieved from the prospect of a mandatory life sentence.  Counsel also hired a private investigator and filed motions <u>in</u> <u>limine</u> to challenge the government's evidence.  In particular, counsel moved to suppress the contents of Henderson's wallet which was seized by police during his arrest.  A hearing was held on March 20, 2001, and this Court ultimately denied the motion.

The case proceeded to trial on April 23, 2001, and the evidence presented against Henderson was overwhelming because the

Drug Enforcement Administration ("the DEA") had been investigating his involvment and gathering evidence since October, 1998. The DEA had enlisted Joseph Mozynski ("Mozynski"), a known crack user, as a cooperating witness. At the direction of the DEA, Mozynski made four controlled purchases of crack cocaine from Henderson. Two of the transactions took place in the basement of Henderson's apartment building and the other two within that vicinity. The deals were surveilled by DEA agents and videotapes were shot of Henderson walking down the street to the purchase locations.

Extensive evidence was presented about the four controlled purchases. The first three of those "buys" proceeded in similar fashion: DEA Agent Robert Guerard ("Agent Guerard") drove Mozynski to a location near Henderson's apartment and gave Mozynski a sum of money which Mozynski used to purchase crack cocaine from Henderson. Mozynski was then debriefed by DEA agents.

The fourth "buy" took place in two parts. On November 16, 1998, Mozynski was driven by Agent Guerard to a location near Henderson's apartment. Agent Guerard gave him $3,000 to buy crack cocaine from Henderson. Powers and Mozynski then went to meet Henderson. Powers gave Henderson the money in exchange for a plastic bag while Mozynski stood a short distance away. Mozynski immediately thereafter took the bag from Powers. The

substance in the bag was determined to be wax.

Mozyznski met defendant Carey that night to protest the "sham sale". Carey acknowledged that Henderson had been the source of the wax and the supplier of the previously purchased crack. Mozynski then spoke by telephone with Henderson, who promised to deliver real crack cocaine the following day. On November 17, 1998, Henderson gave Powers one ounce of crack cocaine and Powers gave it to Mozynski.

In addition to the foregoing evidence, Powers also testified that she bought crack cocaine from Henderson on a daily basis for herself and her own customers. On April 30, 2001 the jury found Henderson guilty on all counts and found that more than 50 grams of crack cocaine was involved in the conspiracy (Count One) and in two of the four counts alleging distribution. The Court sentenced Henderson to 240 months in prison, the low end of the then-applicable guideline range.

## II. Legal Analysis

A federal prisoner may base a claim for relief under 28 U.S.C. § 2255 upon several grounds, one of which may be that the sentence was imposed in violation of the United States Constitution. Although Henderson's petition is difficult to disentangle, he, apparently, argues that his conviction should be set aside on five grounds, which are discussed seriatim.

**1.   Ineffective Assistance of Counsel at the Suppression Hearing**

Henderson's first contention is that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, at the March 20, 2001 suppression hearing. He argues that his attorney committed two errors: a) that his probation officer should have been called to testify and b) that "[c]ounsel was . . . not prepared to effectively argue the points of law".

In Strickland v. Washington, 466 U.S. 668, 686-87 (1984) the Supreme Court articulated a two-pronged test to determine whether the Sixth Amendment right to effective assistance of counsel has been violated. First, the performance of counsel must be shown to be deficient, and second, the deficient performance must be shown to have prejudiced the defense such that there is a reasonable possibility, that, but for counsel's errors the result below would have been different. Id.

Henderson's argument will be summarily rejected because he has altogether failed to address the second prong of the Strickland test. Concerning the potential testimony of Henderson's probation officer, his petition fails to explain what testimony she would have offered or how it could have changed the outcome of the hearing. Thus, Henderson has not even alleged, much less proven, any resulting prejudice to his case.

With respect to Henderson's intimation that his attorney did not know the applicable law at the hearing, Henderson fails to

explain what relevant law was overlooked (by both counsel and the Court) or how that law could have changed the outcome of the hearing or the case. Thus, Henderson has not shown that he was prejudiced by any of the errors that he alleges occurred at the suppression hearing and his petition will be dismissed to that extent.

**2.   Ineffective Assistance of Counsel at Trial**

Henderson next contends that he was afforded ineffective assistance of counsel at trial. His argument, which is presented piecemeal throughout his petition, amounts to a protestation that counsel opted not to call defense witnesses at trial. Henderson argues that his witnesses would have demonstrated that he was involved in the music business rather than the drug business and that the actual drug dealer was a man who lived in Henderson's neighborhood and was known by the same nickname as Henderson (i.e. "Butters").

Once again, when Henderson's argument is tested by Strickland, it fails on the second prong. Henderson claims that there were "10+" witnesses who would have testified on his behalf but does not a) identify those witnesses, b) suggest the import of their testimony or c) contend how they would have refuted the government's case. As such, petitioner has made no showing that his potential witnesses could have altered the result.

Moreover, even if the Court were to indulge Henderson's

-6-

conclusory assertion that he would have elicited evidence that there was another "Butters" in his neighborhood who sold the drugs in question, any such evidence would have been decisively refuted by the sound recordings, photographs, video and testimony that established, beyond dispute, that the seller in question was Henderson and not some other person of the same nickname. Accordingly, Henderson was not prejudiced by his attorney's decision to rely solely on cross examination of the government's witnesses.

As an alternative ground for dismissal, the Court notes that the decision not to put on evidence was a collaborative, strategic decision that he and his attorney made together, following discussion.  Contrary to Henderson's implication, it is often proper, if not advisable, for defense counsel to decline to call witnesses who could end up simply legitimizing the government's case.  See United States v. Lema, 987 F.2d 48, 54 (1st Cir. 1993).  Thus, Henderson's petition will be dismissed insofar as it claims ineffective assistance of counsel at trial.

**3.    Ineffective Assistance of Counsel on Appeal**

Seeking to complete his trifecta, Henderson contends he also was denied effective assistance of counsel during his appeal to the First Circuit Court of Appeals.  He argues that the performance of appellate counsel was deficient because the Court of Appeals was not provided with a complete transcript of the

March 20, 2001 suppression hearing.  Rather, defense counsel provided only a partial transcript to the Court.  In support of his argument, Henderson cites United States v. Selva, 559 F.2d 1303, 1305-06 (5th Cir. 1977) for the proposition that, in such circumstances, reversal of the conviction is mandated without a showing of prejudice.

Henderson is mistaken in his legal analysis.  Selva was decided before Strickland was announced and, in any event, is not followed in the First Circuit.  United States v. Smith, 292 F.3d 90, 97 n.7 (1st Cir. 2002).  Contrary to his assertion, a showing of prejudice is required in cases where the Court of Appeals is not provided with a complete transcript by appellate counsel. Id. ("to obtain reversal and a new trial, the defendant must demonstrate specific prejudice to his ability to perfect an appeal, beyond mere non-compliance with the [Court Reporter Act]")(bracketed material in original).

Henderson has not even attempted to show prejudice.  He fails to describe what was contained in the missing part of the transcript or how it could have made any difference to his case. Once again, Henderson has overlooked the second prong of Strickland and, for that reason, his petition with respect to ineffective assistance of counsel on appeal will be dismissed.[1]

---

[1]It is unclear whether Henderson also intended to argue that appellate counsel provided ineffective assistance in that he failed to attack the admission of the pawn shop receipt on

### 4. Use of "Perjured" Testimony Against Petitioner

Henderson's next argument revolves around an allegation that the government used "perjured testimony" before the grand jury to indict him. Based upon that allegation, he argues for reversal of his conviction based upon "prosecutorial misconduct" and ineffective assistance of counsel (i.e. because counsel failed to utilize the "perjury" as grounds to attack the government's case).

The alleged perjury relates to the grand jury testimony of DEA Agent Timothy Anderson ("Agent Anderson"). On November 16, 1998, the day of the "sham" deal in which Mozynski received wax instead of crack cocaine, a debriefing session was held and Mozynski told Agent Anderson that he had received the plastic bag in question directly from Henderson. Mozynski had, in fact, received the plastic bag from Powers, who, in turn, got it from Henderson. Thus, at the time he testified before the grand jury, Agent Anderson labored under the false impression that Mozynski received the plastic bag directly from Henderson. Although there was evidence that Mozynski was within Agent Anderson's view throughout the transaction (and that therefore Anderson could have deduced that Mozynski had no direct contact with Henderson),

---

"relevancy grounds" on appeal. If so, that argument is summarily rejected because, as stated below, the receipt was plainly relevant and counsel was wise not to press an argument in that regard.

Anderson's failure to recall that Mozynski misspoke about receiving the bag from Henderson was an oversight and not a conscious attempt to deceive the grand jury.

Agent Anderson's grand jury testimony was not perjured or even inaccurate. Although he repeated incorrect information provided to him by Mozynski, he did so only after qualifying his testimony by explaining that it came "from the debriefing". He did not claim, or imply, that he had seen the transaction first hand. In other words, Agent Anderson accurately restated what he had heard from Mozynksi second hand.

As such, Henderson's allegations that Agent Anderson perjured himself and that the government committed misconduct are groundless. Indeed, Henderson's contention that Agent Anderson intentionally "lied" about witnessing the transaction and about how it occurred defy common sense: if a government agent were going to endanger his career and subject himself to potential criminal prosecution for lying before a grand jury, one would expect the false testimony to be about something material and important rather than the sham transaction involving only wax which did not give rise to criminal charges.

The fact that the testimony Henderson questions relates solely to the sham transaction is important for another reason: such testimony could not have been prejudicial to Henderson. Even if Agent Anderson had "lied" about Mozynski's receipt of the

plastic bag containing wax, that transaction did not give rise to an indictment (or conviction) because no drugs were involved. It was only the other events, including what happened on the next day, November 17, 1998, when Henderson delivered to Mozynski an ounce of crack cocaine, that gave rise to the conviction.

As to that latter transaction and to the other drug transactions, the evidence of Henderson's involvement was overwhelming. Therefore, this Court finds no evidence of government misconduct and, in any event, no evidence of prejudice to Henderson. The petition will be dismissed insofar as it alleges government misconduct and ineffective assistance of counsel arising from that alleged misconduct.

**5.   Suppression of the Pawn Shop Receipt**

Henderson's final argument relates to a pawn shop receipt that was found in his wallet during a search incident to his arrest. Henderson contested the admission of that receipt both at trial and on appeal.

The Supreme Court held in Stone v. Powell, 428 U.S. 465 (1976), that a state prisoner who has had a full and fair opportunity to litigate Fourth Amendment issues at trial was precluded from re-litigating those same issues on collateral attack. See also, Arroyo v. United States, 195 F.3d 54 (1st Cir. 1999). While neither the Supreme Court nor the First Circuit has yet addressed the issue, courts in the District of Massachusetts

have consistently held that the same rule applies to petitioners convicted of federal crimes.  <u>See</u>, <u>Kiley</u> v. <u>United States</u>, 260 F.Supp.2d 248, 275 (D.Mass. 2003); <u>Owens</u> v. <u>United States</u>, 236 F.Supp.2d 122, 133 (D.Mass. 2002).  Accordingly, Henderson is precluded from arguing his Fourth Amendment claim in his § 2255 petition and, as to that issue, his petition for habeas corpus will be dismissed.

To the extent that Henderson argues that the admission of the pawn shop receipt was improper because it was irrelevant, the Court summarily rejects that argument.  The receipt was plainly relevant to demonstrate that he had recently received a sum of money.  On the other hand, if the evidence was irrelevant, it could not have prejudiced defendant's case.  Accordingly, Henderson's petition will be dismissed.

## ORDER

For the reasons stated in the foregoing memorandum, the government's Motion to Dismiss (Docket No. 3) is **ALLOWED**, the petitioner's Motion to Vacate, Set Aside or Correct Sentence (Docket No. 1) is **DENIED** and this petition is **DISMISSED.**
**So ordered.**

                                /s/ Nathaniel M. Gorton
                                Nathaniel M. Gorton
                                United States District Judge
Dated February 23, 2005